223 B.R. 654 (1998)
In re U.S.H. CORPORATION OF NEW YORK, et al., Debtors.
Philip and Helen GRANT, et al., Plaintiffs,
v.
U.S. HOME CORPORATION, Defendant.
Bankruptcy No. 91 B 11625(BRL), Adversary No. 98-8552A.
United States Bankruptcy Court, S.D. New York.
August 12, 1998.
*655 *656 Kaye, Scholer, Fierman, Hays & Handler, New York City, for Brigadier Homes, Inc.
Andrew A. Kress, Kaye, Scholer, Fierman, Hays & Handler, New York City, for Meadowbrook Development Corporation.
Bruce Freeman, Westfield, NJ, for U.S.H. Corporation of New York.

MEMORANDUM DECISION GRANTING MOTION TO DISMISS
BURTON R. LIFLAND, Bankruptcy Judge.
U.S. Home Corporation ("US Home"), moves to dismiss the complaint filed by a group of homeowners (the "Plaintiffs") which seeks an order (a) determining that the Plaintiffs are not bound by this Court's order confirming U.S. Home's plan of reorganization and (b) permitting Plaintiffs to pursue prepetition claims against U.S. Home.
Background
On April 15, 1991, U.S. Home, together with certain affiliated entities (collectively, the "Debtors"), filed petitions under chapter 11. In the course of the Debtors' chapter 11 proceedings, by order dated October 22, 1991 (the "Bar Order"), this court fixed December 23, 1991 (the "Bar Date") as the last date by which all claims (with certain exceptions not relevant here) against the Debtors were to be filed. By order dated May 24, 1993 (the "Confirmation Order") the Debtors' reorganization plan was confirmed.
The Debtors are primarily builders of single family homes doing business in eleven states. From 1989 through 1991, U.S. Home developed and built, among other things, numerous townhomes in Country Place subdivision ("Country Place") in Brazoria County, Texas which is in proximity to the Gulf of Mexico. The Plaintiffs are homeowners who reside in Country Place.
In June of 1995, the Country Place townhome owners association (the "Association") attempted to buy windstorm insurance to cover their homes in Country Place because the insurance company which had previously provided its insurance policy had withdrawn from the Texas market. In the course of seeking to purchase such insurance with another company, the Association allegedly was required to produce certificates verifying that the buildings were in compliance with the building code requirements of the Texas Catastrophe Property Insurance Association ("CAT-POOL"). CAT-POOL was formed by a group of insurance companies along with the Texas State Board of Insurance because of the catastrophic, hurricane-related losses which have occurred along the Texas Gulf Coast. According to the Plaintiffs, the purpose of CAT-POOL was to insure that homes built in counties immediately bordering the Gulf of Mexico would be built in such a manner as to reasonably withstand hurricane-force winds and thus, be insurable, at a reasonable rate, against the risk of hurricanes and windstorms.
The Association hired a structural engineer, Howard Pieper, to conduct an inspection of the property in order to obtain the required certification. He subsequently determined that the homes were not built to CAT-POOL standards. According to an affidavit of Mr. Pieper, he had previously been hired by U.S. Home in March of 1991 to assure and certify that a home being built in the Country Place subdivision met the CAT-POOL standards. Mr. Pieper states that he did not find the construction met those standards *657 and in April 1991, informed U.S. Home of the requirements necessary to meet such standards. In May 1991, Mr. Pieper also "prepared a simplified document for use by U.S. Home and its subcontractors." See Pieper Aff.
On August 1996, Plaintiffs sent demand letters to U.S. Home apparently in accordance with the Texas Deceptive Trade Practices Act. U.S. Home responded that the Confirmation Order permanently enjoined litigation against U.S. Home based on prepetition claims. Plaintiffs then commenced this action seeking an order determining that they are not bound by the Confirmation Order because they were not given formal notice of the bankruptcy proceeding.
In moving to dismiss the complaint, U.S. Home argues, first, that the CAT-POOL guidelines are voluntary and, therefore, the Plaintiffs have failed to state a claim upon which relief may be granted. Second, U.S. Home argues, as unknown creditors who received constructive notice by publication of the bankruptcy proceeding, the Plaintiffs' claims are barred by the discharge provisions contained in the Confirmation Order, Plan and section 1141(d) of the Bankruptcy Code. It is undisputed that the claims at issue arose prior to confirmation of the Plan. All of the homes were built and sold by U.S. Home prior to the effective date of the Plan.
Discussion
Under Rule 12(b)(6) of the Federal Rules of Civil Procedure (as made applicable herein pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure), all factual allegations must be taken as true and construed favorably to the plaintiff. See Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir.1996). A motion to dismiss for failure to state a claim can be granted only where it appears certain that no set of facts could be proven at trial which could entitle plaintiff to relief. See Conley, 355 U.S. at 45-46, 78 S.Ct. 99; see also Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41, 44 (2d Cir.1997).
The court's function on a Rule 12(b)(6) motion is "not to weigh the evidence that might be presented at a trial, but merely to determine whether the complaint itself is legally sufficient." Goldman, 754 F.2d at 1067. In light of this standard, the court "should not be swayed into granting the motion because the possibility of ultimate recovery is remote." Kopec v. Coughlin, 922 F.2d 152, 155 (2d Cir.1991) (quoting Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, 748 F.2d 774, 779 (2d Cir.1984)); see also Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir.1995).
Discharge of Prepetition Claims
Ordinarily, an order confirming a reorganization plan operates to discharge all unsecured debts and liabilities, even those of tort victims who were unaware of the debtor's bankruptcy. See 11 U.S.C. §§ 1141 and 524 (1998); Brown v. Seaman Furniture Co., Inc., 171 B.R. 26, 27 (E.D.Pa.1994). Section 524(a) of the Bankruptcy Code provides that:
A discharge in a case under this title operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.
11 U.S.C. § 524(a)(2) (1994). In order to enforce the discharge injunction, a debtor must show that the debt was discharged under section 1141 of the Bankruptcy Code, which states:
Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan discharges the debtor from any debt that arose before the date of such confirmation, . . . whether or not (i) a proof of the claim based on such debt is filed or deemed filed under 501 of this title; (ii) such claim allowed under section 502 of this title; (iii) or the holder of such claim has accepted the plan.
11 U.S.C. § 1141(d)(1). Once confirmed, the plan binds the debtor and all creditors, whether or not a creditor has accepted the plan. See 11 U.S.C. § 1141(a).
*658 Discharge under the Bankruptcy Code, however, presumes that all creditors bound by the plan have been given notice sufficient to satisfy due process. See In re First Am. Health Care of Georgia, 220 B.R. 720, 723 (Bankr.S.D.Ga.1998). Whether a creditor received adequate notice depends on the facts and circumstances of each case. See In re Eagle Bus Mfg., Inc., 62 F.3d 730, 735 (5th Cir.1995). Due process is met if notice is "reasonably calculated to reach all interested parties, reasonably conveys all of the required information, and permits a reasonable amount of time for response." Mullane v. Central Hanover Bank, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); First Am. Health Care of Georgia, 220 B.R. at 724. In Mullane, the Supreme Court held that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 313-14, 70 S.Ct. 652. Thus, if a creditor is not given reasonable notice of the bankruptcy proceeding and the relevant bar dates, its claim cannot be constitutionally discharged. See In re Longardner and Assocs., Inc., 855 F.2d 455, 465 (7th Cir.1988). What constitutes "reasonable notice," however, varies according to the knowledge of the parties.
When a creditor is unknown to the debtor, publication notice of the claims bar date may satisfy the requirements of due process. See Mullane, 339 U.S. at 317-18, 70 S.Ct. 652. However, if a creditor is known to the debtor, notice by publication is not constitutionally reasonable, and actual notice of the relevant bar dates must be afforded to the creditor. See City of New York v. New York N.H. & H.R. Co., 344 U.S. 293, 296, 73 S.Ct. 299, 97 L.Ed. 333 (1953). The term "creditor" in bankruptcy law is sufficiently broad to include a potential creditor. See In re Chicago, Rock Island & Pacific Railroad Co., 788 F.2d 1280, 1283 (7th Cir. 1986); In re S.N.A. Nut Co., 198 B.R. 541, 543 (Bankr.N.D.Ill.1996). Here, the central issue is whether the Plaintiffs were "known" or "unknown" claimants at the time of the Bar Order. As noted above, actual notice is necessary only as to known creditors while constructive notice is sufficient for unknown creditors. See New York, 344 U.S. at 296, 73 S.Ct. 299; In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co., 974 F.2d 775, 788 (7th Cir.1992). Constructive notice can be satisfied through publication notice since "in the case of persons missing or unknown, employment of an indirect and even probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." Mullane, 339 U.S. at 317, 70 S.Ct. 652.
The Bar Order required the Debtors to notify all known claimants by mail and unknown claimants by publication of the Bar Date. In addition to publishing notices in the national editions of The New York Times, U.S.A. Today and The Wall Street Journal, the Debtors published notice of the Bar Date in, among other regional papers and publications, the Dallas Morning News, the Austin American Statesman, the Amarillo Globe Times, the Houston Chronicle, the San Antonio Express News, the Fort Worth Star Telegram, the Lubbock Avalanche, the Harlengen Valley Star, the El Paso Herald Post, the Wichita Falls, the Midland/Odessa Group, and the Abilene Reporter. The Debtors' publication notices were more than sufficient to satisfy due process requirements and hence, if the Plaintiffs' were "unknown" creditors at the time of the Bar Order, their claims are now barred. See New York, 344 U.S. at 296, 73 S.Ct. 299 (in providing notice to unknown creditors, constructive notice of the bar claims date by publication satisfies the requirements of due process); Chemetron Corp. v. Jones, 72 F.3d 341, 348-49 (3d Cir.1995) ("Publication in national newspapers is regularly deemed sufficient notice to unknown creditors, especially where supplemented, as here, with notice in papers of general circulation in locations where the debtor is conducting business"), cert. denied, 517 U.S. 1137, 116 S.Ct. 1424, 134 L.Ed.2d 548 (1996). See, e.g., Brown v. Seaman Furniture Co., 171 B.R. 26 (E.D.Pa.1994) (holding publication in local and national editions of the New York Times sufficient notice to claimant in Pennsylvania); In re Chicago, *659 Milwaukee, St. Paul & Pacific R.R. Co., 112 B.R. 920 (N.D.Ill.1990) (holding publication notice in the Wall Street Journal adequate under bankruptcy law); Wright v. Placid Oil Co., 107 B.R. 104 (N.D.Tex.1989) (holding publication in the Wall Street Journal sufficient notice to unknown creditor injured in Louisiana); In re Best Products Co., Inc., 140 B.R. 353, 358 (Bankr.S.D.N.Y.1992) ("It is impracticable . . . to expect a debtor to publish notice in every newspaper a possible unknown creditor may read.").
If, however, the Plaintiffs were "known" creditors at the time of the Bar Order and failed to receive actual notice, their claims may not be discharged. See Maya Construction, 78 F.3d 1395, 1399 (9th Cir.1996) ("Generally, if a known creditor is not given formal notice, he is not bound by an order discharging the bankruptcy's [sic] obligations."), cert. denied, ___ U.S. ___, 117 S.Ct. 168, 136 L.Ed.2d 110 (1996).
Known versus Unknown
As characterized by the Supreme Court, a "known" creditor is one whose identity is either known or "reasonably ascertainable by the debtor." Tulsa Professional Collection Serv., Inc. v. Pope, 485 U.S. 478, 490, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). An "unknown" creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." Mullane, 339 U.S. at 317, 70 S.Ct. 652.
A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Reasonable diligence does not require "impracticable and extended searches . . . in the name of due process." Mullane, 339 U.S. at 317, 70 S.Ct. at 659. A debtor does not have a "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." Charter Crude Oil Co. v. Petroleos Mexicanos (In re Charter Co.), 125 B.R. 650, 654 (M.D.Fla.1991). See also Trump Taj Mahal Assocs. v. O'Hara (In re Trump Taj Mahal Assocs.), 1993 WL 534494 (D.N.J.Dec. 13, 1993) (explaining that "those creditors who hold only conceivable, conjectural or speculative claims" are unknown).
Case law demonstrates that what is required is not a vast, open-ended investigation. See Chemetron Corp., 72 F.3d at 347. The requisite search instead focuses on the debtor's own books and records. Efforts beyond a careful examination of these documents are generally not required. Only those claimants who are identifiable through a diligent search are "reasonably ascertainable" and hence "known" creditors. Chemetron Corp., 72 F.3d at 346-47. "Reasonable diligence in ferreting out known creditors will, of course, vary in different contexts and may depend on the nature of the property interest held by the debtor." In re Drexel Burnham Lambert Group, Inc., 151 B.R. 674 (Bankr.S.D.N.Y.1993). What is reasonable depends on the particular facts of each case. "A debtor need not be omnipotent or clairvoyant. A debtor is obligated, however, to undertake more than a cursory review of its records and files to ascertain its known creditors." Id. at 680-81 (citations omitted). See also In re Charter Co., 125 B.R. 650, 656 (M.D.Fla.1991) ("Even assuming that [the debtor] knew there was a possibility of a claim by [the claimant], [the debtor] was not required to give actual notice to creditors with merely conceivable, conjectural or speculative claims."); In re Thomson McKinnon Sec. Inc., 130 B.R. 717 (Bankr.S.D.N.Y.1991). Although a debtor is obligated to ascertain reasonably the identity of its creditors by reviewing its own books and records, "a debtor is not required to search elsewhere for those who might have been injured." Texaco Inc. v. Sanders (In re Texaco, Inc.), 182 B.R. 937, 955 (Bankr.S.D.N.Y.1995) (quoting In re Best Products Co., 140 B.R. at 358). See also In re Brooks Fashion Stores, Inc., 124 B.R. 436, 445 (Bankr.S.D.N.Y.) ("it is not the debtor's duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it"). Debtors cannot be required to provide actual notice to anyone who potentially could have been affected by their actions; such a requirement would completely vitiate the important goal of prompt and effectual administration and settlement of debtors' estates. Chemetron Corp., 72 F.3d at 348.
*660 Plaintiffs assert that they are not bound by the U.S. Home bankruptcy discharge because they were known contingent creditors who were not given formal notice of the chapter 11 proceeding. Plaintiffs argue that they were "known" creditors because U.S. Home knew that it sold homes to Plaintiffs that were not built in accordance with the CAT-POOL guidelines and knew that it had an obligation to disclose this information to potential buyers, but failed to do so. U.S. Home argues that there was no law in Texas that required U.S. Home to build in accordance with the voluntary guidelines of CAT-POOL, and no case law, statute, rule or regulation or other legal authority for the proposition that a failure of a builder to construct a home in accordance with voluntary CAT-POOL guidelines is a breach of duty. Moreover, the property at issue was insured for several years and, according to an affidavit filed by U.S. Home, is still readily insurable whether or not the homes were built to CAT-POOL standards.
Given the pleadings and arguments presented to this court, there are no set of facts under which I could find the Plaintiffs were known creditors of U.S. Home before or at the time of confirmation. The Plaintiffs do not counter the crucial contention pled and affirmed by affidavit by U.S. Home, that there is no building code, standard or law which required U.S. Home to build according to CAT-POOL standards.[1] Without the linchpin of a duty of U.S. Home to build in accordance with CAT-POOL standards, U.S. Home could not have been expected to discover any potential claim of the Plaintiffs prior to confirmation, particularly one so remote. It was not the duty of U.S. Home to search out "each conceivable or possible creditor." See Texaco, 182 B.R. at 957. If the Plaintiffs were to be considered known creditors at the time of the confirmation, the universe of creditors entitled to actual notice would defeat the purpose of title 11's expedited and cost effective claims resolution process.
Given the facts presented to the court, it is absurd for Plaintiffs to attempt a demonstration at trial that they were "known" creditors, and thus should not be bound by the Confirmation Order and discharge provisions of the Plan and the Bankruptcy Code. A known creditor is one whose identity is either known or reasonably ascertainable. See Tulsa Professional Collection Serv., Inc. v. Pope, 485 U.S. 478, 490, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). Plaintiffs' interests, as presented, could not have been uncovered by U.S. Home without far-off conjecture. If Plaintiffs were considered known creditors requiring actual notice, U.S. Home would have been required to perform an impracticable and extended search thwarting one of the central purposes of a reorganization which is "to secure within a limited period the prompt and effectual administration of and settlement of the debtor's estate." See Chemetron, 72 F.3d at 346 (citing Katchen v. Landy, 382 U.S. 323, 328, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966)). Under all the facts and circumstances, including the voluntary nature of the CAT-POOL standards and that Plaintiffs had insurance at and post-confirmation, I find that the Plaintiffs were not known creditors of U.S. Home and that the Plaintiffs received constructive notice of the filing by publication. The motion to dismiss is granted.
It is so ordered.
NOTES
[1] At oral argument counsel for the Plaintiffs for the first time alleged U.S. Home represented that the homes they sold to Plaintiffs met CAT-POOL standards. In none of Plaintiffs' papers does this specific allegation appear, not in their motion to reopen, complaint or motion in opposition to the motion to dismiss. While the Plaintiffs pled that U.S. Home represented that its homes were of "`top quality'" and met all building code requirements, see Complaint ¶ 6; Opposition Motion ¶ 2, nowhere was a specific representation as to the CAT-POOL standards pled or stated. On this 12(b)(6) motion, the unsupported, unpled, self-serving allegation that U.S. Home made specific representations does not comport with even the minimal "fair notice" requirement of Federal Rule of Civil Procedure 8 which applies to these proceedings through Federal Rule of Bankruptcy Procedure 7008. See Fed. R.Civ.P. 8; Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir.1986). See also Fed.R.Civ.P. 12(b). Plaintiffs' Counsel's unsubstantiated allegation cannot be given any weight in light of its delinquency and failure to request leave to amend the complaint.